J-S09030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.D.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J., FATHER | : : : : : : : : | |
| | : | No. 2415 EDA 2024 |

Appeal from the Decree Entered August 19, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000453-2020

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:             **FILED MARCH 21, 2025**

A.J. ("Father") appeals from the decree entered by the Philadelphia County Court of Common Pleas ("orphans' court") involuntarily terminating his parental rights to Q.D.R. ("Child"), born in January 2018, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] We affirm.

Father is the father of Child.[2] On February 7, 2019, the Philadelphia Department of Human Services ("DHS") received a Child Protective Services

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decree, the orphans' court terminated the parental rights of Child's mother, C.W. ("Mother"). Mother has filed an appeal from this decree at 2760 EDA 2024. Mother also filed an appeal from the order changing Child's permanency goal to adoption at 2759 EDA 2024.

[2] Father was not listed on Child's birth certificate as the father. However, Father does not dispute he is Child's father.

report which alleged that Mother had punched Child in the face. Child's face was bloody and swollen, and he suffered pain from the incident. Father was not involved in Child's care at this time. On February 11, 2019, DHS obtained an order of protective custody and Child was placed in foster care.

The orphans' court held a shelter care hearing on February 13, 2019, at which it lifted the protective custody order, but allowed the commitment to DHS to stand. On February 21, 2019, a single case plan was created. Father's parental objectives included visiting with Child, attending parenting classes, complying with Clinical Evaluation Unit for dual diagnosis, performing drug screens, and allowing the Community Umbrella Agency ("CUA") access to his home.

On February 15, 2019, DHS filed a dependency petition, seeking an adjudication of dependency based on the above information. On March 18, 2019, following a hearing, the orphans' court adjudicated Child dependent. In a separate order entered on March 18, 2019, the orphans' court found aggravated circumstances existed as to both parents, as Child was the victim of physical abuse while in Mother's care and Father was required to register as a sexual offender because of his prior conviction of involuntary deviate sexual intercourse with a minor.

The orphans' court held a permanency review hearing in June 2019, and ordered Father to comply with anger management and parenting services, complete three random drug and alcohol screens, and comply with all services

and recommendations. In September 2019, the orphans' court held another permanency hearing, at which it found Father to be in minimal compliance with his single case plan ("SCP") objectives. At the December 17, 2019 permanency review hearing, the orphans' court found Father to have no compliance with the plan.

In April 2020, Father was arrested and charged with numerous charges arising out of the sexual assault of a minor. Ultimately, Father pled guilty to unlawful contact with a minor and involuntary deviate sexual intercourse with a child, and thereafter was sentenced to two to six years in prison, followed by three years of probation.

In the interim, on September 16, 2020, a new SCP was created, which set forth parental objectives for Father to follow, including visiting with Child, complying with court orders, completing the dual diagnosis screening, submitting three random drug screens, and availing himself to CUA for case planning. Father was noncompliant with his objectives and visitation.

On May 14, 2024, DHS filed a petition to involuntarily terminate Father's parental rights to Child pursuant to section 2511(a)(1), (2), (5), (8) and (b). The orphans' court held a hearing on June 12, 2024.[3] Ultimately, the orphans' court entered a decree terminating Father's parental rights under section

_____

[3] Separate counsel represented Child's best and legal interests at the hearing. *See* 23 Pa.C.S. § 2313(a).

2511(a)(1), (2), (5), (8), and (b).[4]  Father filed a timely appeal.  Both Father and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

Father raises the following question for our review:  "Did the [orphans'] court commit an abuse of discretion in terminating Father's parental rights by finding the testimony presented by [DHS] was sufficiently competent evidence supported by clear, direct, weighty and convincing facts?"  Father's Brief at 5 (some capitalization omitted).

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law.  That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion.  An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.  Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand.  We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings.  However, we must employ a

_____

[4] On September 24, 2024, the orphans' court also entered an order changing Child's goal to adoption.  Father has not appealed this order.

broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See C.M.*, 255 A.3d at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *Int. of Z.N.B.*, 327 A.3d 241, 248 (Pa. Super. 2024). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48-49 (Pa. Super. 2024) (citation omitted).

As stated above, the orphans' court terminated Mother's rights to Child pursuant to section 2511(a)(1), (2), (5), and (8). This Court "may affirm the [orphans'] court's decision regarding the termination of parental rights with

- 5 -

regard to any one subsection of [s]ection 2511(a)." ***In re J.F.M.***, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(2), which provides as grounds for termination of a parent's rights:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Termination of a parent's rights pursuant to section 2511(a)(2) requires that the petitioner show, by clear and convincing evidence, that the parent is presently unable to care for the child and will not be able to care for him for the foreseeable future. ***Int. of A.R.***, 311 A.3d 1105, 1112 (Pa. Super. 2023).

> A child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. When a parent has demonstrated a continued inability to conduct her life in a manner conducive to providing a safe environment for a child, and the behavior is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

***Id.*** at 1111. The grounds for termination of parental rights under section 2511(a)(2) are not limited to affirmative misconduct; those grounds may also include "acts of refusal as well as incapacity to perform parental duties." ***In re N.A.M.***, 33 A.3d 95, 100 (Pa. Super. 2011).

Incarceration alone is insufficient to support termination of parental rights under any subsection of Section 2511(a). ***In re K.M.W.***, 238 A.3d 465,

474 (Pa. Super. 2020) (en banc). Nevertheless, "incarceration will certainly impact a parent's capability of performing parental duties, and may render a parent incapable of performing parental duties under subsection (a)(2)." *Id.* (citation and emphasis omitted). In fact, "the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination" under section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (citation omitted). "Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind that the child's need for consistent parental care and stability cannot be put aside or put on hold." *In re K.M.W.*, 238 A.3d at 474 (citation, ellipses, and brackets omitted). "[A] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted).

Father argues that the orphans' court abused its discretion in failing to consider that his incapacity was temporary as he would be released from prison soon. Father's Brief at 8, 11. Father highlights that he was scheduled to have a parole hearing in April 2025, and hoped to be released shortly thereafter. *Id.* at 9. He contends that the CUA caseworker did not inform him about his parental objectives or offer him visits with Child. *Id.* at 9-10.

According to Father, CUA failed to provide him any updates about Child. *Id.* at 11. Father maintains that he spoke with Child during Mother's visits. *Id.* Upon his release from prison, Father states that he plans to purchase a home and re-open his flower shop business. *Id.*

At the termination hearing, Whitnee Crawford ("Crawford"), a CUA case manager, confirmed that Child had been in DHS's care for sixty-four months at the time of the termination hearing. N.T., 6/12/2024, at 9. Crawford indicated that there were no records that Father visited Child. *Id.* at 10, 12. According to Crawford, she sent letters to Father, but never received any response. *Id.* at 14, 16-18.

Samir Ismail ("Ismail"), a CUA case manager for approximately one year on Child's case, testified that he sent the case plan to Father, but received no response. *Id.* at 22-23, 25-26. Ismail stated that Father would periodically contact Mother via phone and ask about Child, and that he talked to Child on one occasion. *Id.* at 22-24, 26. Jasmine Brown, a CUA visitation coach who worked on Child's case, testified that Father did not speak to Child during visits she observed and Child did not mention Father. *Id.* at 27-28.

Father testified that he only received one letter from CUA, but that he sent multiple letters to CUA and received no response. *Id.* at 30-31, 37-38, 39. Father explained that he believed talking to Mother was enough to allay any questions or concerns about his parental role. *Id.* at 31-32. He stated that he sent birthday cards to Child. *Id.* at 39.

Father indicated his earliest release date from prison would be April 2025. *Id.* at 33. He further testified that he would buy a home upon release from prison and continue his flower shop business. *Id.* at 33-34. Father also stated he would take care of Child, including dealing with doctor's appointments and school. *Id.* at 34.

The orphans' court found that "Father's incarceration for various sexual offenses against children was clearly an obstacle to achieving reunification with [] Child." Orphans' Court Opinion, 12/19/2024, at 18. "However, it was not an entirely insurmountable obstacle. Father took no affirmative steps to foster any kind of relationship whatsoever with [Child] and doing so resulted in his parental rights being forfeited." *Id.* The orphans' court further found that the DHS witnesses were credible and Father's testimony was "self-serving and unpersuasive." *Id.*

The record confirms Father has made no progress on his SCP objectives during the time Child has been in DHS's care. *See In re C.M.K.*, 203 A.3d at 262 ("Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties."); *In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010) ("The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his [child].") (citation and ellipses omitted). Additionally, Father has not engaged in any visits with Child. Father's

suggestion that the short length of his remaining incarceration should preclude termination overlooks the plain language of section 2511(a)(2). Under section 2511(a)(2), courts must determine whether a parent is incapable of providing "essential parental care, control or subsistence" and whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). Father's potential imminent release from prison does not allow courts to ignore his lack of compliance with his goals or his failure to provide Child with essential parental care, control or subsistence for the entirety of Child's life. *See In re C.M.K.*, 203 A.3d at 264 ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). Accordingly, we conclude that the orphans' court did not abuse its discretion in terminating Father's parental rights under section 2511(a)(2).

We next determine whether termination was proper under section 2511(b). Here, Father has failed to present any argument concerning section 2511(b) in his brief; as such, he waived any such challenge. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").

Even if Father preserved a challenge to section 2511(b), we would conclude that it lacked merit. Under section 2511(b), the orphans' court must

consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. 23 Pa.C.S. § 2511(b). "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quotation marks omitted). The orphans' court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023). The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* at 1113 (citations omitted).

Here, there was ample evidence that Child has no bond with Father and they have no parent-child relationship. Pointedly, Father admitted at the termination hearing that he and Child do not share a bond. *See* N.T., 6/12/2024, at 35 ("I'm locked up. How can I have a bond with my son if I'm locked up? I barely get a chance to talk to him. [Mother] don't answer the phone any longer. So I don't have the opportunity to talk to my son."); *see*

*also id.* at 13-15, 18-19, 24, 26, 28 (noting that Father has had very little contact with Child).

Additionally, the record reflects that R.S., Child's resource parent, provides for Child's needs and welfare, Child is happy and thriving in R.S.'s home, and he is bonded with R.S. *Id.* at 13, 24-25. Indeed, Crawford and Ismail opined that terminating Father's parental rights was in Child's best interest. *Id.* at 13, 15, 24. Thus, if Father properly raised this claim before us on appeal, we would conclude that the orphans' court did not err or abuse its discretion in determining that Child's developmental, emotional, and physical needs and welfare are best met by terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025

- 12 -